UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILBER ROGELIO GARCIA TECU,<br><br>Petitioner,<br>v.<br><br>MARKWAYNE MULLIN, *in his official capacity as Secretary of the U.S. Department of Homeland Security*; TODD BLANCHE, *in his official capacity as Attorney General of the United States*; KENNETH GENALO, *in his official capacity as Field Office Director, New York Field Office, U.S. Immigration and Customs Enforcement*; RAUL MALDONADO, JR., *in his official capacity as Warden of the Metropolitan Detention Center, Brooklyn*,<br><br>Respondents. | **TEMPORARY RESTRAINING ORDER**<br>26-CV-5265 (NRM) |

**NINA R. MORRISON**, United States District Judge:

Petitioner Wilber Rogelio Garcia Tecu is a nineteen-year-old Guatemalan citizen with no criminal record; he has lived in the United States since he first entered the country as a ten-year-old minor, accompanied by his father, in January 2018. On August 1, 2026, he was arrested along with three other individuals by Immigration and Customs Enforcement ("ICE") — two blocks from his home, while on his way back from dinner. He has remained in ICE custody ever since and is currently detained at the Metropolitan Detention Center ("MDC") in Brooklyn, New York.

On August 26, 2026, Petitioner filed the instant Petition for Writ of Habeas Corpus (the "Petition"), ECF No. 1. He alleges that his detention violates his

constitutional and statutory rights and seeks entry of an order directing his immediate release from detention. As set forth in the Petition, Petitioner was apprehended by immigration officials upon entering the United States at the U.S.-Mexico border and subsequently released on his own recognizance. Pet. ¶ 13. From the time of his entry into the United States until his arrest, Petitioner continuously resided in Port Chester, New York. *Id.* ¶ 15. He was not "the subject of any prior immigration enforcement action . . . [nor] convicted of any criminal offense" during this time. *Id.*

On July 22, 2019, an immigration judge ("IJ") at 26 Federal Plaza, New York, ordered Petitioner removed *in abstentia*. *Id.* ¶ 14. At the time the *in absentia* removal order was issued, Petitioner (who was born on July 6, 2007) was twelve years old. *See* ECF No. 10 at 30. Petitioner alleges that he received no notice of the hearing and was unaware of the proceedings against him.[1] *Id.* He was never removed pursuant to the IJ's order, nor was he returned to ICE custody until his August 1, 2026 arrest. *Id.*

The case was assigned to the undersigned on August 27, 2026, at which time the Court entered a jurisdictional order barring Respondents from transferring Petitioner "to a location outside this District, the Southern District of New York, or the District of New Jersey," without leave from the Court. Dkt. Order dated Aug. 27, 2026. The Court also issued an Order to Show Cause ("OTSC"), ECF No. 5, directing

[1] Petitioner's counsel indicates that Petitioner intends to move to reopen the *in abstentia* removal order based on a claim that he was not provided with the required notice. Pet. ¶ 14.

Respondents to file, by 10:00 a.m. on August 31, 2026, a submission (1) providing certain information about Petitioner and his circumstances, (2) indicating the statutory provision under which they assert the authority to detain Petitioner, and (3) addressing whether there is any basis to distinguish the asserted grounds for detention from this Court's decisions in *Diallo v. Lyons*, --- F. Supp. 3d ----, 2026 WL 1791494 (E.D.N.Y. June 22, 2026) and *Zhang v. Genalo*, 814 F. Supp. 3d 307 (E.D.N.Y. 2025). The Court further directed that, if Respondents asserted no basis to distinguish this Petition from *Diallo* or *Zhang*, the submission could take the form of a letter so stating and indicating whether Respondents continue to oppose issuance of the writ, subject to preservation of Respondents' arguments for appeal.

After receiving a brief extension to their submission deadline, *see* Dkt. Order dated Aug. 31, 2026, Respondents responded to the Court's OTSC, asserting detention authority under 8 U.S.C. § 1231 due to the July 22, 2019 *in abstentia* removal order against Petitioner, *see* ECF No. 10 at 2–3. Respondents contend that Petitioner's detention falls within a six-month presumptively reasonable period of detention following the issuance of a final order of removal, authorized by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001). *Id.* at 2–4. They also argue that the Court lacks jurisdiction to grant the Petition under 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g). *Id.* at 5. However, while Respondents note their continued disagreement with this Court's decision in *Diallo* (as well as the reasoning of other courts who have construed 8 U.S.C. § 1231 in a similar fashion), they "acknowledge that [the] Court may determine that the facts of this case may be

similar to those before the Court in *Diallo* and apply the reasoning of that case here." *Id.* at 4 (citation omitted).

Respondents attached various documents[2] to their OTSC response, *see id.* at 1, including: (1) a Notice to Appear dated January 29, 2018, directing Petitioner to appear before an IJ "at a place to be set," "on a date to be set," "at a time to be set"; (2) a warrant for Petitioner's arrest dated January 29, 2018, indicating that Petitioner entered the United States on January 27, 2018, near San Luis, Arizona; (3) Petitioner's Order of Release on Recognizance pursuant to 8 U.S.C. § 1226, dated January 29, 2018; (4) the IJ's July 22, 2019 decision ordering Petitioner removed *in abstentia*; (5) a Form I-200 dated August 1, 2026, which was issued after "biometric confirmation of [Petitioner's] identity" and "statements made voluntarily by [Petitioner] to an immigration officer"; (6) various documents containing information for non-citizens ordered removed; (7) a Form I-213 record of Petitioner's arrest, which indicates that Petitioner was arrested — initially without a warrant — during an ICE operation intended to target a different individual (an Ecuadoran national).

Respondents also included a declaration from Deportation Officer Rothshild Sanon ("Sanon Decl."), ECF No. 10-1. In it, Officer Sanon further represented that a Form G-56 letter ordering Petitioner to report to ICE was to be mailed to Petitioner's last-known address but that "there was no indication [within ICE's electronic records]

[2] Counsel for Respondents informed the Court that they have requested documents relating to Petitioner's removal hearing from the Executive Office of Immigration Review ("EOIR") and were told that it would take "one to two weeks" to receive such documents. ECF No. 10 at 2 n.2.

that the Petitioner reported as requested" or of "an updated address being provided to ICE" between January 29, 2018 and August 1, 2026. *Id.* ¶¶ 9–10. Petitioner was originally detained at Delaney Hall Detention Facility ("Delaney Hall"), before being transferred to MDC on August 19, 2026, then back to Delaney Hall on August 28, 2026 (after the instant Petition was filed). *Id.* ¶ 12. Finally, Officer Sanon asserted that Petitioner's "removal to Guatemala is imminent," because Guatemala participates in the Electronic Nationality Verification Program ("ENV"), which requires only a passport number or consular identification number for removal. *Id.* ¶¶ 14–15. He provided Petitioner's consular identification number and stated that ICE would be able to "expeditiously schedule the Petitioner for removal to Guatemala," if the Court lifts its August 27, 2026 jurisdictional Order. *See id.* ¶¶ 15–17.

On September 1, 2026, the Court ordered (1) Respondents to, by September 2, 2026 at 10:00 a.m., "file a copy of the Notice to Appear served upon, or any notification sent to Petitioner that included date, time, and location information for Petitioner's July 22, 2019 removal hearing," and (2) Petitioner to reply to Respondents' OTSC response by September 8, 2026 at 10:00 a.m. Dkt. Order dated Sep. 1, 2026. The Court subsequently directed Respondents to — by 6:00 p.m. on September 4, 2026 — comply with its September 1, 2026 Order, after Respondents failed to file a notice of Petitioner's removal hearing, as directed. *See* Dkt. Order dated Sep. 3, 2026. Respondents missed this deadline as well and did not respond to the Court's directive until almost 7:30 p.m. on September 5, 2026. ECF No. 12. Counsel for Respondents

confirmed that his office has yet to locate a copy of any notice with specific time, date, and location information for Petitioner's 2019 removal hearing.[3] *Id.*

In the meantime, on September 4, 2026, Petitioner replied to Respondents' initial OTSC response, ECF No. 11. He argues, *inter alia*, that Respondents lacked authority to arrest and detain him on August 1, 2026, because they failed to detain him at any time during the ninety-day removal period that followed the issuance of his 2019 order of removal under 8 U.S.C. § 1231(a), nor did they issue an order of supervision when that original removal period expired. *Id.* at 1–3.

Upon review of the Petition, the accompanying exhibits, the applicable law, as well as Respondents' submissions acknowledging the parallels between this case and this Court's prior decision in *Diallo*, the Court finds that Petitioner has sufficiently demonstrated that he is likely to succeed on the merits of his claim that his detention is unlawful, and that he would suffer irreparable harm if temporary relief was not granted. For those reasons and the reasons that follow, the Court hereby issues a **TEMPORARY RESTRAINING ORDER** directing Respondents to release Petitioner from custody and enjoining Respondents from re-detaining Petitioner while the terms of this Order otherwise remain in effect and the Court considers the merits of the underlying Petition.

Under Second Circuit law, a temporary restraining order is appropriate when

---

[3] Counsel also stated that it understood the Court's Orders to apply "only if such documents existed" and were in ICE's possession. ECF No. 12. Counsel also reiterated that it requested documents relating to Petitioner's July 22, 2019 removal hearing from EOIR and was told that it would take one to two weeks to locate the files, if they existed. *Id.*

a party can demonstrate: "(1) irreparable harm in the absence of an injunction pending resolution of the action; (2) either a likelihood of success on the merits OR both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that the emergency relief is in the public interest." *Iza v. Larocco*, No. 25-CV-6915 (NJC), 2025 WL 3712274, at *3 (E.D.N.Y. Dec. 22, 2025) (citing *Nat'l Am. Soccer League, LLC v. U.S. Soccer Fed'n*, 883 F.3d 32, 37 (2d Cir. 2018)). "The movant must also show that the balance of equities supports the issuance of an injunction [or temporary restraining order]." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 280 (2d Cir.), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021); *see also Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons*, 416 F. Supp. 3d 249, 251 (E.D.N.Y. 2019) ("The standards for a preliminary injunction and temporary restraining order are identical."). "When the government is a party to the suit, [a court's] inquiries into the public interest and the balance of the equities merge." *We The Patriots USA*, 17 F.4th at 295 (citing *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 58–59 (2d Cir. 2020)).

The Court here finds that Petitioner is likely to succeed on the merits of his claim that his detention violated his constitutional and statutory rights. Respondents assert that Petitioner was detained under 8 U.S.C. § 1231. As this Court and others within the Second Circuit have held, § 1231(a)(6) does not provide the government "a free-roaming right to arrest and detain people any time it sees fit" years after the issuance of an order of removal — it simply "provides for a period of *continued* detention for certain classes of people who have not been removed at the conclusion

of the ninety-day removal period." *Diallo*, 2026 WL 1791494, at *9 (quoting *Diallo v. Joyce*, 817 F. Supp. 3d 202, 205–06 (S.D.N.Y. 2025) (emphasis in original)); *see, e.g.*, *Singh v. Acting Field Off. Dir.*, No. 26-CV-4250 (AS), 2026 WL 1536877, at *1 (S.D.N.Y. June 1, 2026); *Parra v. Favro*, No. 26-CV-00363 (AMN), 2026 WL 1030870, at *4 (N.D.N.Y. Apr. 16, 2026) ("Section 1231(a)(6) does not provide [r]espondents the authority to detain [p]etitioner years after [an] In Absentia Order became final."); *Chen v. Noem*, No. 26-CV-1109 (AS), 2026 WL 380712, at *1 (S.D.N.Y. Feb. 11, 2026).

In that vein, the Court finds that Respondents are unlikely to succeed on the merits of their claim that, more than seven years after Petitioner's final order of removal was issued, the Supreme Court's decision in *Zadvydas* authorizes Petitioner's present detention. As the district court noted in *Diallo v. Joyce*, "*Zadvydas* dealt with a different question: how long following the ninety-day mandatory detention period can a person be detained under section 1231(a)(6) . . . . [I]n terms of when section 1231(a)(6) kicks in, the Court took as a given that it follows immediately after the ninety-day removal period." 817 F. Supp. 3d at 206–07 (citation modified).

Here, Respondents concede that far more than ninety days have elapsed since the *in abstentia* removal order was issued against Petitioner in July 2019. *See* ECF No. 10 at 3. They did not detain him at any time during that ninety-day removal period; nor, on the present record, is there any indication that they even sought to detain him in the seven years that elapsed between July 2019 and his August 2026 arrest. Moreover, as Petitioner points out, there is no evidence before this Court of

"a mailing record, a certified-mail receipt, or any other contemporaneous business record evidencing that ICE undertook this, or any other, effort to locate Petitioner at any point between 2019 and his arrest in August 2026." ECF No. 11 at 3.

Accordingly, the Court finds that Petitioner has sufficiently shown a likelihood of success in establishing that his detention violates his constitutional and statutory rights, because Respondents lacked statutory authority to summarily arrest and detain Petitioner nearly seven years after the expiration of the ninety-day statutory removal period under 8 U.S.C. § 1231(a)(1).[4]

The Court further finds a strong likelihood of irreparable harm if Petitioner is not released from his current detention. "There is no question that detention causes irreparable harm: indeed, every minute that someone is unlawfully denied freedom results in an injury that really can never be remedied." *Iza*, 2025 WL 3712274, at *8 (quoting *Alvarez Ortiz v. Freden*, 808 F. Supp. 3d 579, 595–96 (W.D.N.Y. 2025)).

---

[4] The Court further finds that Respondents are unlikely to succeed on their contention that this Court lacks jurisdiction to grant Petitioner relief. *See Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020) ("As we have said before, § 1252(b)(9) does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." (citation modified)); *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (noting that 8 U.S.C. § 1252(g) "applies only to three discrete actions that the Attorney General [or Secretary of Homeland Security] may take: [his] 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders'"); *see also Zhang v. Genalo*, 814 F. Supp. 3d 307, 320. (E.D.N.Y. 2025).

In addition, on the present record, the Court is unpersuaded by the contention that Petitioner was "unavailable" to ICE between July 2019 and his arrest in August 2026. Respondents have not yet provided the Court with any evidence that ICE attempted to locate or remove Petitioner during that time period.

Additionally, Petitioner asserts that his detention violates his constitutional rights. Pet. ¶¶ 23–27, 31–32. The constitutional aspect of his claims increases the likelihood that he faces irreparable harm if not released from his current detention. *See Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996) (holding that a district court's finding that a plaintiff is "substantially likely to demonstrate a violation" of constitutional rights "serve[s] as an independent basis for the [] conclusion that the plaintiff would suffer irreparable harm in the absence of preliminary injunctive relief").

Finally, the Court has weighed the factors under *Mathews v. Eldridge*, 424 U.S. 319 (1976), which sets forth the test that courts in the Second Circuit will apply when determining "the adequacy of process in the context of civil immigration confinement." *Munoz Materano v. Artera*, No. 25 CV 6137, 2025 WL 2630826, at *12 (S.D.N.Y., Sep. 12, 2025). Having considered (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail, *see Mathews*, 424 U.S. at 335, the Court finds that the balance of interests weighs heavily in favor of Petitioner's immediate release from detention. In weighing these interests, the Court notes that Petitioner was only ten years old when he entered the United States in his father's care and custody, and has lived here for more than eight years. Respondents have not disputed that since his entry, while residing in the United States as a juvenile and then as a young adult, Petitioner has had no contact with the criminal justice system and has otherwise lived a peaceful and law-

abiding life. The Court likewise finds that the public interest weighs in favor of this Temporary Restraining Order. *See We The Patriots*, 17 F.4th at 295; *Iza*, 2025 WL 3712274, at *8 ("Freedom from unlawful detention is undoubtedly within the public's interest.").

It is hereby:

**ORDERED**, that Respondents must release Petitioner from custody no later than **6:00 P.M. on September 9, 2026**. Respondents, through counsel, shall file a letter on the docket no later than **8:00 P.M. on September 9, 2026**, confirming that Petitioner has been released from custody, and shall send a courtesy copy of that letter by electronic mail to morrison_chambers@nyed.uscourts.gov and to Petitioner's counsel at the email address listed in the Petition.

Respondents are **ENJOINED** from re-detaining Petitioner, absent prior authorization of this Court, while the terms of this Order otherwise remain in effect and the Court considers the merits of the underlying Petition.

If either party wishes to submit further briefing regarding the merits of the Petition, they shall do so on or before **September 16, 2026**. As an alternative to the above, Respondents may instead file a letter on the docket on or before **September 16, 2026**, indicating that they no longer seek to contest the relief sought in the writ and agree not to re-detain Petitioner absent compliance with § 1231 and without prior leave of this Court to do so, while still preserving their right to appeal or to seek a modification of this Order in the event there is an intervening change in law or a material change in factual circumstances.

Respondents remain under a continuing obligation to continue to search for a copy of the Notice to Appear served upon Petitioner in 2019, or any notification sent to Petitioner that included date, time, and location information for Petitioner's July 22, 2019 removal hearing, and to provide the Court with a copy of those document(s), if they exist, at the time of receipt.

The foregoing **Temporary Restraining Order** shall expire on **September 23, 2026 at 1:00 P.M.** unless it is extended by further Order of this Court for good cause shown or otherwise. *See* Fed. R. Civ. P. 65(b)(2).

**SO ORDERED.**

*/s/ Nina R. Morrison*
NINA R. MORRISON
United States District Judge

Dated: September 9, 2026 at 3:00 P.M.
Brooklyn, New York